My name is Frank Davis. I'm the lawyer representing Gruma Corporation this morning. And we've brought an appeal before this court asking the court to overrule or overturn the district court's decision in this case and to vacate a portion of a labor arbitration award that we've called the Back Pay Award in our briefing because the Back Pay Award constitutes an impermissible punitive damage award and because in ruling on the Back Pay Award, the arbitrator ignored the plain language in our grievance and arbitration policy and issued a decision on the matter. We're not asking the court to vacate any other portion of the award. We believe the remainder of the award is in compliance with John Wiley & Sons, with MISCO, and with Garvey. Can we take it apart? I mean, the arbitrator made one award. You're proposing to dismember it. But can we pick and choose like that? Yes, Your Honor, you can. And the court has done so. Can we be confident the arbitrator would have come to the same result? I mean, I think what you're really putting on the line in arguing that he didn't have the authority to award back pay is that if he can't award back pay, he might reach a different conclusion with regard to termination. Well, I think the arbitrator did address that in the arbitration award. The argument before the arbitrator was whether the company had engaged in due process. Well, whether it had properly given notice of termination and the reasons for termination, and the answer was no, the company had not done that. Based on that, the arbitrator could decide to say that termination is ineffective. He could have, and he was asked to do that, but he declined to do so because what the arbitrator found in the award, Judge Clifton, is the company complied with his sense of due process. The company informed Ms. Gomez of the basis for the discharge, gave her an opportunity to respond. I don't think it's so clear he found that because he also says coming into the hearing, the union thought the discharge was based on what happened with the whole wheat tortillas and the sun-dried tomato tortillas. Sun-dried tomatoes were what she was fired for, right? Yes, yes, Your Honor. She was discharged with a sun-dried tomato incident. And that's what she hadn't been given notice about. She didn't know that was the reason for termination. It doesn't appear the union knew that was the notice of termination. So I'm not so clear that the arbitrator found that they knew the reasons. I don't think they did. I think the arbitrator found it the contrary. Well, I think, Your Honor, with all due respect, I believe the arbitrator did find that the company had given her notice of the sun-dried tomato issue, that Fernanda Lehman, who was the acting human resources manager at the time, because the then-current human resources manager, Alison Barch, was out on maternity leave. So Ms. Lehman stepped in, actually conducted the investigation, told Ms. Gomez the basis for the discharge. Okay. Well, where is that in the arbitrator's award? And, Your Honor, I was just searching for that right now. All right. So in the record side on page 25, the arbitrator finds that Gomez called Efrain Sanchez, who was the union representative, and told him that she was fired for mixing sun-dried tomatoes incorrectly. And the discussion with regard to the sun-dried tomato issue and Ms. Lehman's investigation is contained on pages 24 and 25. But what it says here, I mean, maybe I misunderstood it. I thought that when she called Sanchez, she said that it had been for mixing whole wheat tortillas incorrectly. She told him about the sun-dried tomato wrap issue, and he didn't recall her saying that the wrap issue had been the reason for discharge. Am I looking at the wrong section there? No, Your Honor, that is part of it. Also in the record on page 37, the arbitrator revisits the issue, and he writes out that when Lehman was investigating the incident, she talked to Grievant to find out what happened and recalls that Grievant told Lehman she had been in a hurry and relied on her memory. Lehman testified about her recollection of what Grievant told her. Grievant was present for Lehman's testimony. She didn't deny that Lehman interviewed her, and ultimately the arbitrator finds that Ms. Lehman's testimony regarding the information that she had provided Ms. Gomez about the sun-dried tomatoes issue was credible. Does the agreement with the union require written notice? Section or, excuse me, Article 26, Section 3 does have a specific provision that requires written notice. You're not even close to written notice, are you? No, Your Honor, and there wasn't a question about that. There was no written notice, and that was a mistake on the part of Ms. Lehman. So even if the Grievant knew that, strongly suspected what the grounds for her termination were, she was never provided with written notice. Isn't that the basis for the arbitrator's decision? I believe, Your Honor, that the arbitrator evaluated due process and found that she was given the appropriate due process that the arbitrator felt like was required under his sense of due process. To support termination. To support termination, yes, Your Honor. But then the arbitrator went on to say notice of the reasons for discipline is an element of due process, and due process is an essential part of just cause. And that seems to me to be the nub of the matter, is whether, I mean, certainly the arbitrator had the authority to determine just cause, and he enveloped that with the notion of due process. What would be the legal error there? And that's exactly the right question to ask, Judge McKeown, because it's a fine line that defines it. The arbitrator was authorized, without having to vet Article 26.3 through the grievance process, to decide what constituted due process for the purposes of this decision. And he determined that the company satisfied its due process obligations in this case. Then, and if you'll look at the very end of the decision, and actually you don't have to, I'll tell you what it says. The arbitrator basically said that he decided three issues. The first issue was whether the company had just cause to suspend Ms. Gomez. The second issue was did the company have just cause to discharge Ms. Gomez. He answered yes to both those questions. And then he went on and he asked a third question. Did the company violate Article 26, Section 3 of the agreement? He found that the company did violate it because the company did not provide written notice. And that's the basis of our argument, that it violates the plain language of the agreement. One thing I wanted to point out to the court that I didn't think came through very clearly in the briefing, and I apologize for that, is that grievance and arbitration procedures aren't something we buy off a fine law, or it's not a website. It's something that we meaningfully negotiate. I negotiate lots of contracts for this company and for others. You negotiated for written notice and didn't get it. Why are we supposed to disregard that? Well, Your Honor, I'm not asking the court to disregard that. What I am asking with regard to this case is that we get the opportunity to have the benefit of the grievance and arbitration procedure. We came to the hearing. The argument wasn't presented, the arbitration hearing. The argument wasn't presented until after opening arguments that the ---- And the arbitrator explains because the union didn't know that sun-dried tomatoes were the problem. Well, the union's lawyer didn't know. The union knew. Ms. Bartsch communicated that to the union. But you, as of the opening argument, you knew what the gist of the issue was, correct? Yes, Your Honor. The union was complaining we didn't provide written notice. Did you need more time? Did you need to ---- How would it have changed anything once you knew what the issue was and you're in the arbitration? Did you say to the arbitrator, stop, we need to have a recess, we need more research, we need different witnesses? No, Your Honor, no. And maybe it wasn't necessary in this case. But the core of the appeal regarding plain language is this, that those grievance and arbitration policies have a very real purpose. It's to give us the opportunity to actually sit down and work with the union over any disagreements over how we interpret different provisions of the contract and to give us an opportunity to reach an agreed conclusion so that we're not asking an arbitrator to tell us what we meant when we entered that language. You might want to ---- Do you have a question? Isn't that hypothetical here? I mean, I can't imagine what the grievance would have accomplished with regard to notice since it didn't solve the problem for termination. Basically, you're trying to say you want us to adhere to the form and at the same time the company didn't adhere to the form itself in giving notice. I mean, I don't know that we can pick and choose quite like that. Your Honor, I do understand that argument. I think there is a distinction, and I'd like to think that it's pointed out in the briefing. I'd also like to reserve my 32 seconds for rebuttal, if I may. You may. I will add a little time to that to make it more meaningful. Thank you, Your Honor. Good morning. May it please the Court, I am Sarah Grossman Swenson, attorney representing the Appellee United Food and Commercial Workers, Local 99, the union in this case. We are here today because the employer has appealed a final and binding labor arbitration award. This award was properly upheld by the district court for three key reasons. First, as the U.S. Supreme Court unanimously held in Misko, the judicial review of a labor arbitration award is extremely limited and highly deferential. As the Court explained, courts don't weigh the merits of a dispute, and they don't consider factual or legal error, as an appellate court typically does in reviewing decisions of lower courts. Courts only review to ensure that the arbitrator is even arguably construing or applying the contract. Second, the arbitrator properly held that due process was an integral part of just cause in rejecting the employer's notion that a separate grievance, separate from the grievance over the termination, should have been filed over the employer's failure to provide written notice of the basis of the termination. Third, the arbitrator has broad discretion to craft a common-sense remedy, and in this case, awarded back pay, a remedy that is compensatory and not punitive. How's it compensatory? It is compensatory, Your Honor, because the way in which a grievance might be processed through the procedure is affected by lack of notice. And so an employee ---- It's pretty abstract. Exactly how was the individual employee or the union injured in a way that's reflected or compensated for by an award of back pay? Your Honor, as the arbitrator explained, the ---- he found that the union and the employee may have been prejudiced by the lack of written notice that was provided. He investigated and looked carefully at the industrial common law in ---- and looked for examples where arbitrators had considered similar factual situations. I guess what I'm wondering is what's the limiting principle of this argument? Because its logical conclusion is that virtually any violation could be recharacterized as due process, and they're excusing exhaustion and basically the arbitrator would have in a way a backdoor to reach a whole host of issues that haven't been, as Mr. Davis pointed out, you know, gone through the vetting process in the normal grievance procedure. So, you know, today it's notice, tomorrow it's acts. What is the legal construct in which you fit this so that it doesn't really swallow the whole arbitration grievance process? Yes, Your Honor. Well, the industrial common law does spell out the contours of due process. And the arbitrator in this case looked to ensure that this particular type of due process issue, lack of written notice, found some basis in the industrial common law. And he concluded here that lack of written notice, particularly where the parties have contracted for that to be a component of due process, is the type of due process violation that may be remedied in a just cause determination. But why is back pay the appropriate remedy? That doesn't seem really to have any sense of proportionality to the infraction here. Your Honor, the arbitrator carefully discusses the range of permissible remedies in a like situation. And as this Court held in Federated Department stores, where there is a due process violation, an employee may in fact be reinstated, a remedy that is certainly more burdensome to the employer than a mere award of back pay. Is the harm here to the employee or to the union? Was it the union that was prejudiced because it comes into the arbitration hearing representing her and not realizing sort of what the grounds are? Or is it she that somehow has been damaged? Because she's going to get the award, right, I assume, not the union. Well, Your Honor, I think that both parties are damaged by this type of due process violation. Who's going to get the back pay award? The back pay award certainly would go to the individual, Your Honor. Okay. She isn't going to go to some obligation to share some portion of that with the union. No, absolutely not, Your Honor. Okay. So why is this an appropriate measure of her damages? Well, as several prominent labor treatises explain, it is actually quite common for an arbitrator to find that back pay without reinstatement is the proper award where the employer committed a procedural violation that's not viewed by the arbitrator as serious enough to warrant overturning discharge. I just accept your argument on those terms. There is no logical connection or no measure of compensation in back pay. It's just back pay is an available remedy and labor law permits its application. I believe, Your Honor. I mean, is there any logical connection? Yes, Your Honor. I believe there is a logical connection. Then kind of ask three times and we're waiting for it. What's the logic? Let me just say that. She was undisputedly properly discharged, correct? Well, certainly the union, I believe, would dispute that, Your Honor. But at this point, that's not at issue. Is that at issue? She's discharged properly. I don't believe that's an issue. Okay. So if you have somebody who's discharged properly, they normally wouldn't actually also get a little back pay if they were properly discharged, right? Well, that's true, Your Honor, but here the union would actually argue that she was not discharged properly, because part of the part and parcel of whether or not she was discharged properly is whether she received due process during the discharge. And an employee that doesn't know the basis for their termination might think that they're going to get their job back. They might think, okay, I was only terminated for this particular issue. The union might think the same thing. And therefore is less able to explore all of the issues in the case, is less able to prepare the case for arbitration. And that is a causal relationship between failure to provide notice and ---- If the problem is that the union is not prepared for the hearing, then it seems like a more appropriate measure would be some measure of attorney fees or costs or something like that. If the detriment is to her in that she can't tell the ---- explain to the union what the cause was, or she's going to say it's the flour tortillas and it turns out that it was the sun-dried tomato tortillas that she mismixed, then perhaps there's something to your argument that she has relied to her detriment and that she may think that reinstatement is more likely if it's the flour tortillas that were the cause of her termination rather than the sun-dried tortillas. Absolutely, Your Honor. Do we have any evidence of that? Is there anything that was before the arbitrator that would suggest that? Yes, Your Honor. I believe the arbitrator did find that both she and the union may have been prejudiced. And the reason is that the employee would in fact think in this case that she was going to get her job back. She thought that the basis for the termination was the whole wheat tortilla incident, not the sun-dried tomato incident. And therefore, she thought there was no due process. This termination. But how is she harmed in the end if the employer's cause actually is in effect sustained? I mean, I'm still having some trouble with this junction between, you know, the flour and the sun-dried tomato wraps. If in fact there was a basis to discharge her as a result of the sun-dried tomatoes, then how is she harmed? Well, Your Honor, part of the whether or not there was a basis to discharge her comes back to the issue of whether or not the company provided due process, which is a fundamental component of the just cause issue. And so I'm not sure that it's possible to do that. I mean, it's kind of odd because the arbitrator says the company had just cause to discharge grievant. Yes, Your Honor. And the discharge is sustained. And I think that that at best is an ambiguity in the arbitrator's decision. As the Supreme Court has made clear, sort of a mere ambiguity like that does not suffice to overturn an arbitration award. And this situation here, this remedy that was provided was well supported by the industrial common law. The arbitrator details a number of instances where arbitrators have found in similar situations that a word of back pay from the time of termination to the time of the arbitration hearing was warranted. And the arbitrator here found that that was because notice was provided at the hearing. And that is sort of the limit on the back pay that was awarded. Thank you. Your Honors, I see that I am out of time. And in closing, I would respectfully request that the Court affirm the decision of the district court confirming and enforcing the award in this matter. Thank you. I do put two minutes on the clock for Mr. Davis's rebuttal, please. Thank you very much, Judge McKeown. Briefly, I would like to respond to the issue of prejudice and then I will cut more to the point. On page 43 of the record, the arbitrator addressed prejudice. The arbitrator held in the second full paragraph there that the reasons the agreement was discharged, and he goes on to state in the second paragraph that the purpose of Article 26 is to make sure that the agreement has clear notice. But he says in this case the company provided oral notice. He says we didn't technically comply with Article 26, Section 3. And then he concludes that at the same time the union did not demonstrate that the company's failure to provide the required written notice resulted in a substantial injustice to grievance. From there he goes on to say, nevertheless, the violation warrants some type of remedy because of the importance of this due process right to others in the future. This Court in previous cases has held that punitive damages award constitutes a punishment for the employer, to teach the employer not to do the same type of action again in the future. And that's, in fact, what the arbitrator said he has done in this case. And that's the real concern from my perspective as a member of the Bar, is that the district court expanded Goss West sheet metal to include punitive damages as an industrial common law that can be read into a contract. And I think that that flies in the face of this Court's rulings in many cases, Desert Palace, Foley, and Communication Workers v. G-Tail. You seem to have some concern about the downstream effect of this ruling, but as I understand the district court order is not for publication. It applies to this case only. Is that right? Yes, Your Honor. I believe that that is really, and I'm over time here. Thank you. Thank you, Your Honor. I appreciate it. The case just argued, Gruma Corporation v. United Food and Commercial is submitted. I want to thank both counsel for your arguments this morning and for coming here to ASU.
judges: McKeown, Clifton, Bybee